MISSOURI PACIFIC RAILWAY COMPANY V. M. H. VANDEVENTER.

[FILED DECEMBER 4, 1889.]

1. **Railroads**: KILLING STOCK: NEGLIGENCE: QUESTION OF FACT. In an action for damages resulting from the killing of horses belonging to the plaintiff in such action, and which had strayed upon a railroad track through an open gate in the fence erected along the sides thereof by the railroad company, the evidence showed that the train which killed said horses struck them in the night; that there was snow on the ground which had lain there some time, and was packed and solid; that a light snow had fallen on the night of the accident, but previous thereto. The train was running at a high rate of speed. From the tracks made in the recently fallen snow it was apparent that the horses had run at a rapid rate of speed in front of the engine for some distance, but were finally caught, thrown from the track, and killed. This was *held* to be sufficient proof of negligence on the part of the railroad company to justify the submission of the question to the jury and to sustain a verdict in favor of the plaintiff in the action.

2. ———: ———: ———: INSTRUCTIONS. In such case the question of negligence was one proper to be submitted to the jury by the instructions.

ERROR to the district court for Richardson county. Tried below before APPELGET, J.

*B. P. Waggoner*, and *Isham Reavis*, for plaintiff in error, cited: *C., B. & Q. R. Co. v. Magee*, 60 Ill., 529; *Indianapolis & C. R. Co. v. Adkins*, 23 Ind., 340, 345; *Indianapolis, P. & C. R. Co. v. Shimer*, 17 Ind., 295; *Russell v. Hanley*, 20 Ia.,219; *Vanhorn v. Burlington, C. R. & N. R. Co.*, 63 Ia., 67; *Eames v. Boston & W. R. Co.*, 14 Allen, [Mass.], 151; *Maynard v. Boston & M. R. Co.*, 115 Mass., 458; *Brooks v. N. Y. & E. R. Co.*, 13 Barb. [N. Y.], 594.

*Frank Martin*, for defendant in error, cited: *C. & A. R.*

*Co.*, 92 Ill., 247 ; *Baker v. C., B. & Q. R. Co.*, 73 Ia., 389 [35 N. W. Rep., 460].

REESE, CH. J.

This is a proceeding in error to the district court of Richardson county.

Defendant in error filed his petition in that court, in which he alleged in substance that plaintiff in error was a corporation owning, operating, and managing a line of railroad through Richardson county, in this state, and that on the 4th day of February, 1886, while so operating said road, and at a point thereon between the village of Verdon and the village of Stella, and at a point on said road where it was the duty of plaintiff in error to keep its track fenced, plaintiff in error had constructed a gate for a private crossing over and upon said track, but had carelessly and negligently allowed said gate to remain unfastened, unsecured, and open, so as to allow free ingress and egress to and from said track, and that during the night preceding the date named, three horses, the property of defendant in error, without his knowledge, fault, or negligence, broke out of his enclosure, escaped from his premises, and passed through the said open gate onto the track of plaintiff in error, where it, by its agent, servants, and employes, ran an engine and train of cars over and upon the horses, by which they were killed; to the damage of defendant in error in the sum of $335, the alleged value of said property. It was also alleged that said horses were upon the track of plaintiff in error and in plain view of its agents and employes engaged in running said train, which was moving at a very rapid rate of speed, and that they negligently, willfully, and intentionally ran onto and upon said horses; that due notice of said loss had been given to plaintiff in error by defendant prior to instituting the suit.

The amended answer of plaintiff in error admitted the

8

corporate capacity of said company and that at the time re-
ferred to it was operating the line of railroad as stated in
the petition.    But it was alleged that the track was securely
fenced, as required by law, at the point where the horses
came upon said track and where the collision occurred, but
that said track at that point, being across the farm of one
Andrew Tynan, plaintiff in error, had erected for the sole
use and benefit of said Tynan a gate or crossing to enable
him to pass from one part of his farm to another, over and
across the said track; that said gate had been opened by
some person to plaintiff in error unknown and without
fault or negligence on its part; that said gate was constructed
for the sole use and benefit of the said Tynan, and in no
particular whatever for the use or benefit of plaintiff in error.
All negligence on the part of plaintiff in error was denied.

A trial was had to a jury, which resulted in a verdict
and judgment in favor of defendant in error, and against
plaintiff in error, for the sum of $325.

The facts, as shown by the evidence submitted to the
jury, may be briefly stated to be: That on the night in ques-
tion defendant in error had the horses referred to in lots on
his farm, which was near to and adjoining the farm of
Tynan; that during the night they escaped through an open
gate onto the said Tynan's farm, and finally wandered
through the open gate at the crossing onto the railroad
track of plaintiff in error.    The witnesses on the part of
defendant in error testified that on the next morning the
horses were found near the railroad track, two of them
dead, the other badly injured; that at that time there was
a large quantity of snow upon the ground, which had lain
there for a considerable length of time, and was packed and
solid; that during the night previous to the morning re-
ferred to a light snow had fallen, and by the tracks of the
horses in this snow it was seen that they had passed through
the gate onto the track of plaintiff in error and had moved
southeasterly along said track for a considerable distance,

perhaps about one quarter of a mile; that it appeared from the tracks that they had stopped, turned suddenly around, and taken the opposite direction in a run, the tracks showing where they had slipped in starting, as though making a sudden turn. By the distance between their tracks, it was concluded they had run in a northeasterly direction between the rails for a distance of about seven hundred feet from where they turned and about six hundred and fifty feet from where they had reached a full run. At this point two of the horses were found dead near the track, the third in the condition hereinbefore stated, standing near by. It was also shown by the snow upon the ground, and by the condition of the horses, that they had been thrown violently from the track upon either side of the road-bed. It was also testified on the part of defendant in error that no snow had fallen into the tracks made at the time and prior to the collision, and that therefore the accident occurred after the snow had ceased falling. That at the point where the accident occurred the road was substantially level and straight, and at the place where the horses turned their course from the southeast to the northwest along the track, the engine could have been seen approaching about forty rods distant.

From these facts it was urged upon the trial in the district court, and contended in this court, that had the servants of plaintiff in error, who had charge of the train, been properly attending to their duties, and keeping a lookout upon the track ahead, they could have not only seen the horses when they turned to retrace their steps, but that by the rapidity with which the horses ran, as was shown by their tracks, the whole distance of the seven hundred feet, over which the engine passed while pursuing them, they were in plain view of the engineer and fireman, and that the accident resulted either through the gross negligence of the said engineer and fireman in not seeing the horses, and checking the speed of the train, or in willfully and intentionally running them down by the engine. It was shown

that subsequent to the accident and prior to the trial the engineer had died.   The fireman was called as a witness on the part of plaintiff in error and he testified that at the time of the accident it was snowing very hard and that sleet was falling ; that he could not see the horses until directly upon them, when it was impossible to stop the train or to so check its speed so as to prevent the accident ; that the horses at that time were not running but were standing upon the track, two of them with their heads towards the train, and were so standing when they were struck by the engine; that the third one, at the moment of the collision, with the two referred to, turned and ran some distance along the track, when he too was caught by the train and thrown off.

Witnesses on the part of defendant in error testified that there was no sleet on the night referred to ; that it was very cold and the snow as it lay upon the ground the next morning was very light.

The assignments of error contained in plaintiff's petition are : That the verdict was contrary to, and not supported by, evidence, and was contrary to law and the instructions of the court, and that the evidence did not warrant the verdict in favor of defendant in error; that the court erred in modifying and changing an instruction to the jury requested by plaintiff in error and in overruling the motion for a new trial.

It was not shown by the evidence how long the gate at the crossing referred to had been permitted to stand open, nor whether plaintiff in error knew, or might have known, of its condition, prior to the occurrence of the accident.   It is contended that plaintiff in error owed no obligation to defendant in error in connection with said gate, it being the private property and for the sole use and benefit of Mr. Tynan, the owner of the farm through which the road passed ; that the track being fenced, it was not negligence on the part of plaintiff in error to run its train at a high rate of speed, and therefore, in the absence of negligence

with reference to the gate referred to, on the part of plaintiff, it could not be held liable unless it was shown that the horses were willfully, wantonly, and intentionally killed by the servants of plaintiff in error in the operation of the train; that the evidence does not establish either of these propositions, and therefore the verdict should have been in favor of plaintiff in error.

Upon the other hand it is contended by defendant in error that the evidence fully and sufficiently shows that the horses must have been killed, not only by the negligence of the employes of plaintiff in error, but that such killing must have been willful and wanton, else it would have been avoided.

Upon the question as to whether the night of the accident was so dark and stormy at the time of the collision as to render the engineer and fireman unable to see the horses at any distance, the evidence was conflicting, and for the purpose of this decision we must presume the jury found correctly—that they could have been discovered had a sufficient lookout been maintained.    We think it must also be conceded that the horses ran in front of the train from the point where they turned upon the track to where they were thrown off by the pilot.    This is not only reasonable from the evidence, but no other conclusion can be adopted consistent with the physical appearances on the next morning as detailed by the witnesses.    At all events we cannot say that a man in the exercise of fair judgment and without passion or prejudice might not find that the men in charge of the engine could have avoided the injury by the exercise of ordinary care.    If the facts existed as contended, and of this the jury were the sole judges, plaintiff in error was negligent and liable. (*C. & A. R. Co v. Kellam*, 92 Ill., 247; *Baker v. Railroad Company*, 35 N. W. Rep. [Iowa], 460.)

It is contended that the trial court erred in modifying an instruction asked by plaintiff in error and in giving the instruction as modified.    The instruction asked was as follows:

"If the jury find from the evidence that the horses escaped upon the track of the defendant through a gate erected by the company for the accommodation of Mr. Tynan, the court instructs you that the defendant cannot be held responsible for that fact, as it was not charged with any duty with reference to keeping the gate shut and therefore was not to blame for killing the horses unless the jury shall be satisfied that the killing was done willfully and wantonly by the servants of defendant." The modification added was as follows: "Or unless you shall further find that the killing was done through the negligence of the servants of defendant." As will be observed, this modification submitted to the jury the question of negligence, which had been omitted from the instruction as asked.

We apprehend that, even were it true that the horses went upon the track without fault or negligence on the part of plaintiff in error or its employes, yet this would not relieve it from the exercise of care, or justify it in negligently killing the horses, and therefore the question of negligence was properly submitted to the jury.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.